UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

BUILDING SERVICE 32BJ PENSION FUND,

    Plaintiff,

 -v-                                                  No. 18-CV-12226-LTS-OTW

1180 AOA MEMBER LLC, and ABC COMPANIES 1-10
(all other trades or businesses under common control with
1180 A0A MEMBER LLC),

    Defendants.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiff Building Service 32BJ Pension Fund ("the Fund") has moved for default judgment against Defendants 1180 AOA Member LLC ("1180 AOA") and ABC Companies 1-10 ("ABC Companies"), pursuant to Federal Rule of Civil Procedure 55(b)(2) and S.D.N.Y. Local Civil Rule 55.2(b), on claims arising pursuant to 29 U.S.C. § 1381 from 1180 AOA's withdrawal from the Fund. (Docket Entry Nos. 32, 35, Motion for Def. Judgment & Memorandum of Law in Support.) 1180 AOA has not formally appeared or responded in accordance with the Federal Rules of Civil Procedure to the claims asserted by the Fund in this action. The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1337, 29 U.S.C. § 1132(e)(1), and 29 U.S.C. § 185(c).

        The Court has reviewed the Fund's submissions carefully and, for the following reasons, grants the Fund's unopposed motion for default judgment as to Counts One and Two, but denies the motion as to Count Three. Count Three is dismissed without prejudice.

BACKGROUND

The following recitation of facts is drawn from the Complaint (Docket Entry No. 1, "Complaint"), as well as from uncontroverted documentary evidence filed in support of the instant motion practice. In light of 1180 AOA's failure to respond to the Complaint, the well-pleaded factual allegations contained therein are deemed admitted. See Fed. R. Civ. P. 8(b)(6); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability"). The Fund's additional factual proffers in support of the instant motion are uncontroverted. (Docket Entry Nos. 33-34.)

The Fund is a jointly-administered, multiemployer, labor-management trust fund that operates pursuant to multiple collective bargaining agreements as an employee benefit plan under the Employee Retirement Income Security Act ("ERISA"). (Complaint, at ¶ 4.) 1180 AOA is a New York limited liability company that previously owned a commercial building located at 1180 Avenue of the Americas in New York City (the "1180 Building"). (Id. at ¶¶ 4, 6A.) ABC Companies are alleged to be trades or businesses under common control with 1180 AOA and each other. (Id. at ¶ 6B.)

Here, the relevant collective bargaining agreement is one between the Realty Advisory Board on Labor Relations, Inc. ("RAB"), which represents employers owning commercial office buildings in New York City, and the Service Employees International Union, Local 32BJ ("Union"). (Docket Entry No. 34, Thomas Ormsby Affidavit in Support of Motion for Default Judgment, "Ormsby Affidavit," at ¶¶ 3-4.) The collective bargaining agreement under which the Fund is currently operating (the "2016 CBA") obligates participating employers to contribute to the Fund and is effective from January 1, 2016, to December 31, 2019. (Docket Entry No. 33, Ira Sturm Affidavit in Support of Motion for Default Judgment, "Sturm Affidavit,"

Exh. E; Complaint, at ¶ 4.) 1180 AOA was a party to the 2016 CBA through representation by the RAB for that purpose. (Ormsby Affidavit, at ¶ 4, and exhibits thereto.)

In February 2018, 1180 AOA sold the 1180 Building. (Complaint, at ¶ 8.) By letter dated June 12, 2018, the Fund notified 1180 AOA of its complete withdrawal from the Plan, 1180 AOA's withdrawal liability, that a lump sum payment or monthly installment payments would be due starting on August 12, 2018, and that 1180 AOA had a right to arbitral review of the assessment within 90 days. (Sturm Affidavit, Exh. F.) 1180 AOA failed to initiate withdrawal liability payments by August 12, 2018, and the Fund notified it of 1180 AOA's default by letter dated September 21, 2018. (Id. at Exh. G.) 1180 AOA did not cure its default or make a timely arbitration request regarding the withdrawal liability assessment. (Complaint, at ¶¶ 11-12.) As a result, the Fund accelerated 1180 AOA's withdrawal liability payment obligation. (Id. at ¶ 13.)

The Fund's June 12, 2018, letter also stated that all trades or businesses under common control with 1180 AOA were jointly and severally liable for the withdrawal liability. (Sturm Affidavit, Exh. F.) The Fund's September 21, 2018, letter requested information identifying each trade or business under common control with 1180 AOA. (Id. at Exh. G; Complaint, at ¶ 15.) 1180 AOA never responded to that request. (Complaint, at ¶ 16.)

The Fund served the Summons and Complaint in this action upon 1180 AOA on January 15, 2019, by delivering it to the Office of the Secretary of State of New York. (Docket Entry No. 5.) To date, 1180 AOA has not filed a response or formally appeared.[1] A certificate

---

[1] In an unsworn letter to the Court, a law firm identifying itself as "corporate counsel" to 1180 AOA asserted that Plaintiff did not serve the Complaint properly on 1180 AOA, that 1180 AOA is not a party to the CBA, and that 1180 AOA did not receive Plaintiff's withdrawal liability and default notices. (Docket Entry No. 21.) 1180 AOA has never appeared in this action, however, and has made no evidentiary proffers in response to the Complaint or the default judgment motion practice.

of default was issued by the Clerk of Court as to 1180 AOA on February 8, 2019 (Docket Entry No. 10), and the Fund moved for default judgment on April 12, 2019 (Docket Entry No. 26), and filed and served a second set of default judgment motion papers on October 4, 2019. (Docket Entry Nos. 32-34.)

### DISCUSSION

In determining whether to grant a motion for default judgment, courts within this district first consider three factors: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Santana v. Latino Express Restaurants, Inc., 198 F. Supp. 3d 285, 291 (S.D.N.Y. 2016) (citation omitted); see also Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013) (applying these factors in review of lower court grant of a default judgment).

Here, the Court finds that all three factors weigh in the Fund's favor. First, 1180 AOA's failure to respond to the Fund's Complaint and failure to respond to the default judgment motion practice are indicative of willful conduct. See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07-CIV-6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (citation omitted) (holding that non-appearance and failure to respond to a complaint or motion for default judgment indicate willful conduct). Second, because 1180 AOA has failed to appear or respond to this action, the Court is unaware of any meritorious defense that 1180 AOA could present. It is clear from the letter filed by 1180 AOA's counsel that Defendant is aware of this action and the Fund's intent to move for judgment by default. Defendant has chosen not to file an Answer or otherwise respond to the Complaint. The putative defenses proffered in the unsworn letter are, furthermore, refuted by the Plaintiff's uncontroverted pleadings and

evidentiary proffers.[2] Third, the Fund will be prejudiced and left with no alternative recourse if it is denied judgment by default, as 1180 AOA has willfully failed to respond to the Complaint and the present motion.

The Court must next "decide whether the plaintiff has pleaded facts supported by evidence sufficient to establish the defendant's liability with respect to each cause of action asserted." Santana, 198 F. Supp. 3d at 291. Where the Court finds that the facts and evidence sufficiently establish liability, it "must go on to 'determine the appropriate amount of damages, which involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages to be determined under this rule.'" Id. (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).

Count One: Failure to Make Withdrawal Liability Payments

The Fund alleges that 1180 AOA incurred withdrawal liability as a result of its sale of the 1180 Building, and subsequently defaulted on its withdrawal liability payments. Under ERISA § 4301(a), an employer is liable for withdrawal liability "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal." 29 U.S.C.S. § 1381(a) (LexisNexis 2016). A "complete withdrawal" from a multiemployer plan takes place when an employer "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C.S. § 1383(a) (LexisNexis 2016). For a fund to collect withdrawal liability, it first "must decide whether a withdrawal has occurred, the amount of the employer's withdrawal liability, and the

---

[2] The Fund has filed an affidavit demonstrating proper service upon 1180 AOA via the Secretary of State, an affidavit and corroborating documentation demonstrating that 1180 AOA was a party to the relevant CBA, declarations attesting to delivery of the withdrawal liability and default letters, and responses by 1180 AOA's representatives to those letters. (Docket Entry Nos. 33-34.)

schedule for liability payments to the fund." UNITE Nat. Ret. Fund v. Veranda Mktg. Co., No. 04-CIV-9869 (BSJ), 2009 WL 2025163, at *3 (S.D.N.Y. July 13, 2009).

The Fund has pleaded facts that are supported by evidence sufficient to establish that a withdrawal pursuant to 29 U.S.C. § 1381(a) by 1180 AOA occurred. The 2016 CBA obligated all participating employers to contribute to the Fund, and 1180 AOA was a participating employer for the 1180 Building until it sold the 1180 Building in February, 2018. (Ormsby Affidavit, at ¶ 4-5; Sturm Affidavit, Exh. E.) 1180 AOA ceased to have an obligation to contribute to the Fund upon sale of the 1180 Building, as explicitly provided in the Fund's Withdrawal Liability Policy. (Complaint, at ¶ 8; Sturm Affidavit, at ¶¶ 4, 9; Ormsby Affidavit, Exh. H.) The sale of the 1180 Building therefore caused a complete withdrawal.[3] (Sturm Affidavit, at ¶¶ 4, 9.)

The Fund also complied with statutory procedural requirements once it determined a withdrawal had occurred. After the Fund had determined that a withdrawal had occurred, section 1399(b)(1) required the Fund to (1) "determine the amount of the employer's withdrawal liability;" (2) "notify the employer of the amount of liability and the payment schedule; and" (3) "demand payment according to the schedule." National Retirement Fund v. Caesars Entertainment Corp., No. 15-CIV-2048 (LAK) (JLC), 2016 WL 2621068, at *4 (S.D.N.Y. May 5, 2016). The Fund's June 12, 2018, letter to 1180 AOA shows that the Fund fulfilled these statutory requirements. See Sturm Affidavit, Exh. F. The Fund's September 21, 2018, letter also fulfilled these statutory requirements, additionally warning 1180 AOA that the

---

[3] Further confirmation that an employer's sale of assets triggers withdrawal liability is provided by ERISA § 4204, which permits an asset-selling employer to avoid withdrawal liability if it and the asset-buyer satisfy certain security posting requirements. 29 U.S.C. § 1384. This statutory exemption implies that a withdrawal occurs as a result of a sale of assets if those security posting requirements are not satisfied.

Fund would require "immediate payment of the outstanding amount of [1180 AOA's] withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made," if the delinquent payments required by the June 12, 2018, letter were not cured.  Id. at Exh. G; 29 U.S.C. § 1399(c)(5).  The Fund's acceleration of 1180 AOA's payment obligation when the default had gone uncured for 60 days after the Fund's September 21, 2018, withdrawal liability default notification to 1180 AOA was statutorily authorized and consistent with the notice given in that letter.  29 U.S.C. § 1399(c)(5); Sturm Affidavit, Exh. G.

Accordingly, the Fund met the statutory procedural requirements, properly accelerated the payment schedule, and is entitled to recover the full withdrawal liability.

ERISA § 4301 provides that "any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution."  29 U.S.C.S. § 1451(b) (LexisNexis 2016).  1180 AOA's unpaid withdrawal liability is thus treated as a delinquent contribution.  29 U.S.C. § 1451(b).  Pursuant to 29 U.S.C. § 1132(g)(2), when awarding judgment in an action involving delinquent contributions, the Court must award the Plan the unpaid contributions, interest on those unpaid contributions, liquidated damages, reasonable attorneys' fees and costs, and other legal or equitable relief as this Court deems appropriate.

*Outstanding Withdrawal Liability*

Pursuant to 29 U.S.C. § 1401(b)(1), Defendants' failure to seek arbitration of the liability assessment renders the assessed amount of withdrawal liability uncontestable.  The withdrawal liability amount documented in the analysis proffered by the Fund to the Court therefore establishes the withdrawal liability component of the judgment.  See Durso v. Modern Food Center, Inc., No. 17-CIV-7324 (LAK) (GWG), 2018 WL 3019112, at *4 (S.D.N.Y. June

18, 2018). Thus, the Fund is entitled to recover $287,404, which is the full amount of 1180 AOA's assessed withdrawal liability.  See Sturm Affidavit, Exh. F.

*Pre-Judgment Interest*

The Fund's written delinquent contribution enforcement policy sets an interest rate of 9 percent per year for delinquent payments.  (Ormsby Affidavit, Exh. I; Ormsby Affidavit, at ¶ 11.)  29 U.S.C.S. section 1132(g)(2) (LexisNexis 2016) provides that "the court *shall* award the plan . . . interest on the unpaid contributions" which "shall be determined by using the rate provided under the plan."  Accordingly, the Court awards the Fund interest on the $287,404 liability from November 21, 2018, the acceleration date, through the date on which judgment is entered, at the rate of 9 percent per year.  (Docket Entry No. 33, Exh. E.)

*Liquidated Damages*

The Fund's written delinquent contribution enforcement policy provides that liquidated damages are to be assessed at 20 percent of the total principal due for delinquent payments.  (Ormsby Affidavit, Exh. I.)  In addition to principal and accrued interest at the plan rate, 29 U.S.C. § 1132(g)(2)(C) requires this Court to award the Fund an amount equal to the greater of the (1) interest on unpaid contributions or the (2) liquidated damages provided for under the plan in an amount no greater than 20 percent of the unpaid contributions.  Here, the plan's 20 percent liquidated damages amount is greater than the accrued interest.  The Court therefore awards the Fund liquidated damages provided for under the Fund's policy in the amount of $57,480.80.

*Attorneys' Fees and Costs*

The Fund also seeks attorneys' fees in the amount of $20,693.75 and costs in the amount of $465.  (Sturm Affidavit, at ¶¶ 25, 29.)  This Court must award "reasonable attorneys' fees and costs of the action."  29 U.S.C.S. § 1132(g)(2)(D) (LexisNexis 2016).  "The most useful

starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Triumph Const. Corp. v. New York City Council of Carpenters Pension Fund, No. 12-CIV-8297 (KPF), 2014 WL 6879851, at *2 (S.D.N.Y. Dec. 8, 2014) ("the product of a reasonable hourly rate and the reasonable number of hours required by the case" creates "a presumptively reasonable fee") (internal citations omitted).

Reasonable hourly rates are the "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation," and the relevant community is "the district in which the court sits." Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994) (citations omitted). Courts in this district have approved partner billing rates that range from $350 per hour to $425 per hour in ERISA delinquent contribution cases. See, e.g., Trs. of the Mason Tenders Dist. Council Welfare Fund v. Stevenson Contracting Corp., No. 05-CIV-5546 (GBD) (DF), 2008 WL 3155122 (S.D.N.Y. June 19, 2008) (finding $350 to be a reasonable hourly partner rate); New York District Council of Carpenters Pension Fund v. Perimeter Interiors, Inc., 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (finding $425 to be a reasonable hourly partner rate). In the instant case, the Fund's counsel has been admitted to practice since 1977, is a partner at his law firm, and requests $275 per hour. (Sturm Affidavit, at ¶¶ 26-28.) Because this rate is less than those that have been approved in this district for attorneys performing similar work, the Court finds $275 is a reasonable hourly rate.

The "party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records." Trustees of Local 531 Pension Plan v. Corner Distributors, Inc., No. 07-CIV-529 (ARR) (MDG), 2008 WL 2687085, at *7 (E.D.N.Y. July 8, 2008). However, if the Court determines that the number of hours

expended is excessive, redundant, or otherwise unnecessary, the Court "can exclude excessive and unreasonable hours from its fee computation by making an across-the-board reduction in the amount of hours." Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997).

Having reviewed the time records thoroughly, the Court finds the 75.25 hours billed to be somewhat excessive because: (1) the hours were billed in quarter-hour segments; (2) there are identical, insufficient explanations for several substantial time entries; and (3) this is a straightforward, uncontested default judgment motion in a delinquent contribution action. See Sturm Affidavit, Exh. I; Division 1181 Amalgamated Transit Union-New York Employees Pension Fund v. D & A Bus Company, Inc., 270 F. Supp. 3d 593, 625-26 (E.D.N.Y. 2017) (collecting cases and finding that the hours billed were excessive because uncontested delinquent contribution defaults involved "routine, straightforward" tasks and legal issues); Blake v. New York City Health and Hospitals Corporation, No. 14-CIV-3340 (JGK) (AJP), 2016 WL 6520067, at *7 (S.D.N.Y. Nov. 3, 2016) (stating that billing in quarter-hour segments is generally disfavored because it "tends substantially to overstate the amount of time spent when many tasks require only a short time span to complete and adds an upward bias in virtually all cases") (internal citations omitted); M.L. ex rel. M.P. v. Board of Ed. of City of New York, No. 02-CIV-4288 (SHS), 2003 WL 1057476, at *4 (S.D.N.Y. Mar. 10, 2003) (stating that time records must be sufficiently clear and descriptive to "enable the court to determine the nature of the tasks performed and the amount of time reasonably required to perform those tasks") (citation omitted). For example, the time records proffered here indicate that over 30 hours of partner time were spent "research[ing] and draft[ing] court papers" for the instant motion for default judgment, and over 20 hours were spent "research[ing] and draft[ing] court motion papers" for an earlier discovery motion, totaling 53.25 hours of partner time between the two motions, neither of which involved novel legal issues. (Sturm Affidavit, Exh. I.) The descriptions of

these block-billed hours are very bare and repetitive, which prevents the Court from evaluating the nature of the tasks to determine their reasonableness. As a result, the Court deems the entries to be excessive and finds, despite the relatively low hourly billing rate, that a 20 percent reduction in hours expended on the motion practice is warranted. Compare Malletier v. Artex Creative Int'l Corp., 687 F. Supp. 2d 347, 363 (S.D.N.Y. 2010) (reducing 56.5 hours expended on straightforward trademark matter by 15 percent) with Suggs v. Crosslands Transp., Inc., No. 13-CIV-6731 (ARR) (MDG), 2015 WL 1443221, at *12 (E.D.N.Y. Mar. 27, 2015) (reducing 34.8 hours expended by 30 percent based on work completed and complexity of issues). Accordingly, the Court awards the Fund $17,765 in attorneys' fees.[4] Plaintiff's request for an award of $465 in costs, covering the filing fee for this action and service of process, is granted.

Count Two: Request for Information

Count Two alleges that 1180 AOA was required, pursuant to 29 U.S.C. section 1399(a), to respond to the Fund's request for information regarding the common control of 1180 AOA and ABC Companies, and that 1180 AOA failed to provide such responses within the statutory time period. (Complaint, at ¶¶ 16, 22.) Under § 1399(a), an employer "shall, within 30 days after a written request from the plan sponsor, furnish such information as the plan sponsor reasonably determines to be necessary to enable the plan sponsor to comply with the requirements of this part." 29 U.S.C.S. § 1399(a) (LexisNexis 2016). The Fund is required to notify any trades or businesses under common control with 1180 AOA because all such trades or business "shall be treated as. . . a single employer," and the Fund is required to provide notice and demand for payment of the amount of liability, the schedule for liability payments, and

---

[4] The Court has reduced the 53.25 hours expended on motion practice by 20 percent to 42.6 hours, which, when added to the additional 22 hours spent on other tasks, yields an adjusted total of 64.6 hours. (Sturm Affidavit, Exh. I.) That total, multiplied by the hourly rate of $275, yields attorneys' fees in the amount of $17,765.

demand for those payments to the employer "[a]s soon as practicable" after withdrawal. 29 U.S.C. § 1301(b)(1) and 1399(b)(1) (LexisNexis 2016); see also UNITE, 2009 WL 2025163 at *4 ("Withdrawal liability extends to any trade or business under common control with the withdrawing employer") (internal citation omitted).

On September 21, 2018, the Fund served 1180 AOA with a letter requesting information regarding whether Defendants ABC Companies are under "common control" with 1180 AOA. (Sturm Affidavit, Exh, G.) The Fund did not receive a response to its request for information from 1180 AOA within 30 days of its request and has not received a response to date. (Complaint, at ¶ 16.) Because the Fund is required to provide notice and demand for payment to the entities that are allegedly under common control with 1180 AOA and 1180 AOA has not provided information in response to the Fund's request, these facts demonstrate that 1180 AOA has violated 28 U.S.C. section 1399(a).

The Fund seeks an injunction compelling 1180 AOA to respond fully to its request for information concerning commonly controlled businesses. (Complaint, Requests for Relief, at ¶ 5.) ERISA permits a plan fiduciary to bring an action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." 29 U.S.C.S. § 1132(a)(3)(A) (LexisNexis 2016). Because 1180 AOA is violating 29 U.S.C. § 1399(a), the Fund's request for an injunction ordering 1180 AOA to supply the Fund with the requested information is granted. See Division 1181, 270 F. Supp. 3d at 617 (recommending that defendant be ordered to supply Plaintiff with requested "common control" information).

Count Three: Joint & Several Liability

Count Three alleges that 1180 AOA and Defendants ABC Companies are jointly and severally liable for the withdrawal liability and other damages claimed in Count One because they are under common control pursuant to 29 U.S.C. § 1301, Internal Revenue Code § 414(c),

and regulations promulgated thereunder. (Complaint, at ¶¶ 24-25.) The Fund must support this allegation with evidence that sufficiently establishes that 1180 AOA and ABC Companies exist, and that they are in fact under common control and are subject to this Court's jurisdiction. See Santana, 198 F. Supp. 3d at 291. The Fund has not yet done so, and thus has failed to meet its burden of demonstrating its entitlement to judgment by default on Count Three. Plaintiff's default judgment motion is denied as to Count Three, which will be dismissed without prejudice.

CONCLUSION

For the foregoing reasons, the Fund's Motion for Default Judgment as to Counts One and Two is granted and the Fund is hereby awarded (1) $287,404 in withdrawal liability, (2) $28,913.63 in prejudgment interest for the period from Nov. 21, 2018, through the entry of judgment, (3) $57,480.80 in liquidated damages, and (4) $17,765 in attorneys' fees, plus $465 in costs, against Defendant 1180 AOA. Interest shall accrue at the legal rate following the entry of judgment. Defendant 1180 AOA is hereby directed to serve upon the Fund's counsel, within 14 days from the date of entry of judgment, an affidavit and supporting documents sufficient to identify each entity that is a trade business under common control with Defendant 1180 AOA within the meaning of 29 U.S.C. § 1301(b)(1), 26 U.S.C. § 414(c), and regulations promulgated thereunder, and all other information sought in the Fund's June 12, 2018, and September 21, 2018, Requests for Information.

Count Three is dismissed without prejudice.

The Clerk of Court is directed to enter judgment accordingly and close this case.

This Memorandum Opinion and Order resolves docket entry numbers 26 and 32.

SO ORDERED.

Dated: New York, New York
January 3, 2020

  /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge